Kathleen Bliss
NV Bar No. 7606
Kathleen Bliss Law PLLC
170 South Green Valley Parkway, Suite 300
Henderson, NV 89012
Telephone: (702) 318-7375
Email: kb@kathleenblisslaw.com
Additional co-counsel listed on signature page
ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASSES

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
SOUTHERN DIVISION

| | |
|---|---|
| IRENA STANIC RASIN, on her own behalf, and on behalf of all similarly situated individuals,<br><br>     Plaintiff,<br><br>  v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>     Defendant. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

  1.  Plaintiff Irena Stanic Rasin ("Stanic Rasin") is an enrollee in a Cigna Health and Life Insurance Company ("Cigna") health plan. She has disabling hearing loss and

requires prescription hearing aids[1] and related services as recommended by her licensed hearing care provider. Stanic Rasin, however, cannot obtain coverage for this needed medical device because her Cigna health plan excludes all coverage for hearing aids for people over the age of 21, and Stanic Rasin is 58.  Based on information and belief, Cigna categorically excludes hearing aids, regardless of age, in other health plans.   These exclusions, whether in full or starting at a particular age, are referred to collectively as the "Hearing Aid Exclusions" or "Exclusions."

2.    Cigna's Hearing Aid Exclusion is illegal disability and age discrimination under the Affordable Care Act's anti-discrimination law, known as Section 1557.  *See Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 948 (9th Cir. 2020) (Kaiser's hearing aid exclusion could be proxy discrimination on the basis of disability).  It is proxy disability discrimination because adults with disabling hearing loss do not have access to the durable medical equipment they need, while other enrollees do.  It is also facial age discrimination, because, at least in some plans, Cigna imposes the Hearing Aid Exclusion based upon an enrollee's age, without regard for their actual need for hearing aids.

3.    In *Schmitt*, the Ninth Circuit held that the Affordable Care Act ("ACA") prescribed a paradigm shift in the health insurance industry. So-called "fair discrimination" against people with disabilities, including people with disabling hearing loss, was

---

[1] In this Complaint, the terms "prescription" and "prescribe" are used to refer to prescriptions and/or recommendations from licensed hearing care professionals necessary to obtain a non-over-the-counter hearing aid and related treatment. *See* 21 C.F.R. § 800.30(b) (defining a "prescription hearing aid" as a hearing aid that is not an over-the-counter hearing aid). Before October 17, 2022, hearing aids were only available by prescription or written recommendation by a licensed hearing care professional. Since that date, over-the-counter hearing aids ("OTC hearing aids") are available for use by adults with mild to moderate hearing loss without a prescription. In this Complaint, "hearing aids" or "prescription hearing aids" refer to hearing aids that are only available with a written recommendation or prescription from a licensed hearing care professional. Hearing aids that can be purchased without a prescription are referred to as "OTC hearing aids."

outlawed:

> Prior to the ACA's enactment, an insurer could generally design plans to offer or exclude benefits as it saw fit without violating federal antidiscrimination law—in particular, the Rehabilitation Act…. The primary issue before us is ***whether the ACA's nondiscrimination mandate imposes any constraints on a health insurer's selection of plan benefits. We hold that it does.***

*Id.* (emphasis added). Before the ACA, insurers could design benefits to avoid coverage of people with disabilities and chronic health conditions. *See, e.g.*, RCW 48.30.300(2). Now, however, health insurers and others subject to the ACA have "an affirmative obligation not to discriminate in the provision of health care—in particular, to consider the needs of disabled people and not design plan benefits in ways that discriminate against them." *Id.* at 955. This includes discrimination based on hearing disability.

4.     The United States Department of Health and Human Services ("HHS") has concluded that age exclusions on hearing benefits are presumptively discriminatory when imposed without clinical justification. Since "[i]ndividuals can experience hearing loss at any stage of life," and Cigna does not have a legitimate clinical basis for its Age Exclusion, it is discriminatory. HHS Notice of Benefit and Payment Parameters for 2023, 87 FR 27208-01 (May 2, 2022).   This is also consistent with the statutory and regulatory requirements of the Age Discrimination Act.  *See* 42 U.S.C. § 6103(b)(1); 45 C.F.R. § 90.14.

5.     Disability and age discrimination in health insurance are not new. Rather, both stem from a long history of prejudice, exclusion, and stigmatization of people with disabilities and older adults in general. The Affordable Care Act's Section 1557, 42 U.S.C. § 18116, protects enrollees from both disability and age discrimination in the design and administration of their health coverage.

6.     This case seeks to enforce the protections against disability and age discrimination, as incorporated into the ACA.

7.     Cigna discriminates on the basis of disability and/or age when it (or a

3

subsidiary or affiliate) designs, insures, and/or administers health plans that exclude all coverage for hearing aids, a treatment required only by hearing disabled enrollees. The same is true when Cigna excludes all coverage for hearing aids for people above a certain age, such as in Plaintiff's health plan.

8. Specifically, prescription hearing aids are the essential piece of durable medical equipment that ensures that hearing disabled individuals are not isolated and segregated from the mainstream of American society. The same is true at any age. Hearing aids can profoundly improve the life, health and social engagement of hearing disabled enrollees. In this sense, hearing aids are like wheelchairs for mobility disabled persons or insulin and supplies for diabetic individuals—they are the medical devices that offer Plaintiff and the vast majority of hearing disabled enrollees of all ages access to many daily activities and indeed, the world at large. For Plaintiff and the proposed class, prescription hearing aids are the key to equal treatment and meaningful access to society.

9. Yet, Cigna excludes coverage for prescription hearing aids in many of its health plans designed and administered by it or by its affiliates and subsidiaries ("Hearing Aid Exclusion" or "Exclusion"), either altogether or for those over a particular age, such as the age of 21.

10. Stanic Rasin is an adult over the age of 21 who is diagnosed with disabling hearing loss and who resides in Clark County, Nevada. Stanic Rasin is enrolled in Cigna-administered health plan. Stanic Rasin is diagnosed with disabling hearing loss and requires prescription hearing aids.

11. Cigna is a health insurance company that designs, insures and/or administers health plans and receives federal financial assistance for part of its health programs and activities. It is a "covered entity" subject to the Affordable Care Act's anti-discrimination law, 42 U.S.C. § 18116, known as Section 1557.

12. Cigna offers fully-insured health plans, where individuals and/or employers pay a fixed premium to Cigna to cover health care claims and Cigna pays for those claims.

It also acts as a claims administrator where, for a fee, it processes and pays claims, but where the employer ultimately reimburses Cigna for the cost of any approved claims (this is referred to herein as acting as a "third party administrator" or "TPA").

13.     Based on information and belief, Cigna designs and administers health plans, whether insured or self-funded, that exclude all coverage for prescription hearing aids or, in some instances, all coverage for prescription hearing aids for people over a particular age, such as the age of 21.   Based on information and belief, Cigna offers employers that hire Cigna as a TPA the option to include the Hearing Aid Exclusions in the health plans that Cigna administers.  Based on information and belief, Cigna also applies the Exclusions in some or all of its insured health plans.  In sum, Cigna engages in illegal discrimination on the basis of disability against people with disabling hearing loss who require hearing aids and, when applying the Exclusions based on a particular age, on the basis of age, whether in its fully-insured or self-funded health plans.

14.     Stanic Rasin's Cigna health plan excludes all coverage for hearing aids and hearing-aid related services over the age of 21.  Specifically, Stanic Rasin's plan states that it covers "charges for hearing aids and associated exam for device testing and fitting, including but not limited to semi-implantable hearing devices, audiant bone conductors and Bone Anchored Hearing Aids (BAHAs). A hearing aid is any device that amplifies sound," the plan covers these benefits *only* for "minors through age 21, maximum of $2,500 per pair of hearing aids every three years," which "[i]ncludes testing and fitting of hearing aid devices covered at PCP or Specialist Office visit level. (Ex. 1 at 30, 38.) These benefits are not covered for enrollees over the age of 21, such as Stanic Rasin.

15.     But for Cigna's Exclusion, Plaintiff Stanic Rasin's prescribed hearing aids would have been covered as they are considered medically necessary by Cigna and are a form of durable medical equipment or prosthetic. As a result of Cigna's discrimination, Stanic Rasin and proposed class members do not have access to the essential medical equipment required to treat their disability at all or because of their age. At the same time,

other enrollees have access to medically necessary medical equipment to treat their diagnosed health conditions.

16. Based on information and belief, class members' medical diagnosis of hearing loss together and the code for hearing aids trigger the denial of coverage for the durable medical equipment that they need in health plans that wholly exclude coverage of Hearing Aid. Hearing disabled enrollees in these health plans are discriminated against based on their disability.

17. Based on information and belief, in some health plans, Cigna also imposes the Hearing Aid Exclusion only after an enrollee reaches a particular age, such as the age of 21. The trigger for the denial of coverage in those plans is their medical diagnosis, the code for hearing aids, together with their date of birth. Hearing disabled enrollees in these plans who cannot obtain hearing aid coverage are still discriminated against on the basis of disability, although they have an additional claim for discrimination based on their age.

18. Cigna's categorical exclusion of coverage for hearing aids is grounded in the historic isolation and segregation of people with disabilities, including those with hearing disabilities, from the mainstream of American society. *See* 42 U.S.C. § 12101(a)(2)–(3). The Exclusion at issue here is one of many historical yet ongoing discriminatory barriers that individuals with disabilities continually encounter and that anti-discrimination law was designed to combat. *See* 42 U.S.C. § 12101(a)(5).

19. Categorical exclusions of a particular device or treatment were routinely applied when the device or treatment at issue was overwhelmingly required by disabled individuals and not the general population. *See* Blake, Valarie, *Restoring Civil Rights to the Disabled in Health Insurance,* 95 Neb. L. Rev. 1071, 1086 (2017) (hereinafter "Blake"). Indeed, before the Affordable Care Act, many health plans purposefully and legally excluded coverage of various durable medical devices in order to avoid covering people with disabilities. *Id.*

20.     Historically Cigna offered no coverage related to hearing loss and excluded other forms of durable medical equipment needed by disabled enrollees, even including wheelchairs.

21.     The Hearing Aid Exclusion is a remnant of the historic exclusionary treatment. It persists in Cigna's benefit design without medical or scientific justification.

22.     The historic exclusion of coverage for hearing aids was not reexamined by Cigna when the ACA's anti-discrimination laws took effect. Such discrimination is no longer legal under the ACA. Cigna's failure to evaluate whether its Exclusion was a form of disability discrimination is "thoughtless indifference" or "benign neglect" of the coverage needs of insureds with disabilities and older adults, and a form of discriminatory prejudice. *See Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021).

23.     Hearing aids are only used by people with hearing loss or impairment. Hearing aids do not treat or ameliorate any other medical condition.

24.     Cigna's Hearing Aid Exclusion impacts only or nearly only hearing disabled insureds. Cigna's Hearing Aid Exclusion directly targets hearing disabled people by eliminating the key medical device they need to treat and ameliorate their disability, resulting in illegal discrimination.

## JURISDICTION AND VENUE

25.     This action arises in part under Section 1557 of the Patient Protection and Affordable Care Act ("Affordable Care Act" or "ACA"), 42 U.S.C. § 18116.

26.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States.

27.     Declaratory relief is authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

28.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because, *inter alia*, Plaintiff and Defendant resides or may be found in this district and a substantial part of the

events giving rise to the claims continues to occur in Clark County, Nevada.

29.    The Court has personal jurisdiction over Cigna because it does business in the District of Nevada, including providing health insurance to Nevada residents.

## PARTIES

30.    ***Irena Stanic Rasin.*** Plaintiff Stanic Rasin is an adult over the age of 21 who resides in Clark County, Nevada. Stanic Rasin is enrolled in a Cigna-administered health plan as a result of her husband's employment. Stanic Rasin is diagnosed with disabling hearing loss and requires prescription hearing aids.

31.    ***Cigna Health and Life Insurance Company.*** Defendant Cigna Health and Life Insurance Company Cigna is a health insurance company that designs, insures, and/or administers health plans, including Stanic Rasin's plan. It is headquartered in Connecticut and engaged in the business of insurance in Nevada. It is a "covered entity" subject to the Affordable Care Act's anti-discrimination law, 42 U.S.C. § 18116, known as Section 1557 because it receives federal financial assistance in part of its health programs or activities.

## FACTUAL BACKGROUND

**A.    Hearing Loss Is Treated with Medically Necessary Hearing Aids and Cochlear Implants.**

**1.    Hearing Loss.**

32.    Hearing involves a complex process by which sound waves are converted to vibrations that are transmitted through the eardrum to the middle-ear bones, then to the fluid-filled cochlea in the inner ear. The cochlea contains tiny hair cells that respond to specific frequencies and emit microscopic electrical impulses to the auditory nerve, from which the brain decodes the sound. Hearing loss is the result of damage to one or more of those components.

33.    A common preliminary screening for hearing loss is a pure-tone test, in which subjects are presented with tones at different frequencies (pitches), measured in

Hertzes (Hz), at increasing volume, measured in decibels (dB). The subjects are asked to indicate when they hear those tones. The threshold loudness at which a tone becomes audible is recorded on an audiogram.

34.    The critical metric from an audiogram is the average decibel threshold in the frequencies involving speech, which are the frequencies of 500, 1,000, 2,000 and 4,000 cycles per second, measured in Hertzes (Hz).

35.    The generally accepted standard for normal hearing is a threshold of 25 dB.[2] If the tones must be louder than 25dB to be audible, the subject has worse-than-normal hearing. An average decibel threshold greater than 25 dB in the speech frequencies is generally considered, from a population wide basis, the point at which "hearing loss begins to impair communication in daily life." Lin, *et al.*, *Hearing Loss Prevalence in the United States,* Archives of Internal Medicine, Vol. 14, No. 20 at pp. 1831–32 (Nov. 14, 2011).

36.    The most common form of hearing loss is sensorineural hearing loss ("SNHL"), in which the inner-ear and/or the nerves that carry sound information from the inner ear to the brain are damaged. That damage is generally not correctible through surgery or medication, and can be mitigated only through hearing aids or, in extreme cases, cochlear implants.

37.    Conductive hearing loss occurs when damage to the outer or middle ear prevents sound from reaching the inner ear. Conductive hearing loss can be addressed with a bone-anchored hearing aid, which bypasses the damaged middle-ear structures and transmits sound directly to the cochlea and the hair cells. A bone-anchored hearing aid is a different device than a "cochlear implant" and, as the name makes clear, is considered to be a type of hearing aid.

---

[2] While the results of audiometric testing, standing alone, are not sufficient to define whether an individual is "disabled" under federal law or from a medical perspective, certain audiometric thresholds are used on an epidemiological basis to classify entire populations for public policy and scientific purposes.

38.     Plaintiff Stanic Rasin is diagnosed with SNHL.

**2.     Prescription Hearing Aids.**

39.     Until October 2022, the fitting and dispensing of hearing aids were limited by law to licensed hearing care professionals. Even today, prescription hearing aids may only be obtained upon the written recommendation or prescription by a licensed hearing care professional.

40.     Hearing aids are generally prescribed when a patient's hearing loss is confirmed by objective studies showing hearing loss together with subjective reports to a licensed hearing care professional of a significant impact from the hearing loss on their daily functioning. Licensed hearing care professionals do not typically prescribe hearing aids when these two requirements are not met.

41.     As a result, all or very nearly all individuals who require prescription hearing aids are "disabled" under federal law, since they have an objectively diagnosed hearing loss that causes a substantial impact on their daily functioning leading to the prescription of hearing aids by a licensed hearing care professional. That is the case with Plaintiff Stanic Rasin.

**3.     Cochlear Implants, Osseointegrated Devices and OTC Hearing Aids Do Not Meet the Needs of Most People with Hearing Disabilities.**

42.     A CI is a medical intervention and device for a limited class of people with severe to profound sensorineural hearing loss. A CI bypasses the damaged hair cells in the inner ear. It consists of an external microphone and processor that send electronic signals to an array of electrodes embedded in a filament that is threaded into the cochlea. Those electrodes substitute for the damaged hair cells by sending electronic impulses directly to the auditory nerve, creating a sensation of sound.

43.     A CI is only available to people with severe to profound hearing loss who

cannot be adequately treated with hearing aids.

44.     CIs are implanted through an invasive surgical procedure. Once they are implanted, the insured cannot go back to using hearing aids or hear without the use of CIs. The devices do not restore hearing, and once implanted, the insured may need three to six months to adapt to hearing through the implant.

45.     CIs only meet the needs of approximately 5% of people with moderate to severe hearing loss.

46.     Osseointegrated devices or BAHAs are a treatment for conductive and mixed hearing loss, as well as unilateral SNHL. https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/baha--the-implantable-hearing-device (last visited 11/27/24).

47.     Osseointegrated devices meet the needs of only a tiny portion of hearing disabled enrollees. Current estimates are that 75,000 Americans have received BAHAs. There is no breakdown of BAHA recipients by age. Based on the Census Bureau estimates that over 18 million Americans of all ages self-report serious hearing loss, fewer than 1% treat that condition using BAHAs.

48.     Of the estimated 18 million Americans of all ages who self-report serious hearing loss, only 171,000—less than 1%—are currently being treated by either CIs or BAHA hearing aids. By comparison, according to the Census Bureau, some 8.3 million Americans of all ages use hearing aids. Based on those numbers, CIs and BAHA hearing aids together account for just over 2% of treatments for hearing loss. https://www.census.gov/content/dam/Census/library/publications/2018/demo/p70-152.pdf (last visited 11/27/24) (explanatory text at p. 7 and charts on pp. 21 (adults) and 31 (children)).

49.     Since October 17, 2022, adults may obtain OTC hearing aids without a prescription by a licensed hearing care professional. However, one recent report indicates that very few adults with hearing loss presently use OTC hearing aids. *See ASHA OTC*

*Hearing Aid Survey,* September 12, 2023 found at: https://www.asha.org/news/2023/over-the-counter-hearing-aids-otcs-1-year-later/ (last visited 11/26/2024) (in August 2023, only 2% of survey respondents, all people over 40 with self-reported hearing difficulties had purchased an OTC hearing aid). The U.S. Food and Drug Association ("FDA") recently concluded that it is too soon to determine the impact of OTC hearing aids on consumer access to hearing aids. *See* GAO Over-the-Counter Hearing Aids:  Information on the New Medical Device Category, GAO-24-106854, May 7, 2024, found at: https://www.gao.gov/products/gao-24-106854 (last visited 11/26/24). And, while some very small percentage of hearing disabled enrollees may have their needs for hearing devices met with OTC hearing aids, since OTC hearing aids are purchased without a prescription, they are not eligible for health insurance coverage, even if the Hearing Aid Exclusion were removed.

50.     In sum, CIs, BAHAs and OTC hearing aids do ***not*** meet the needs of most people with disabling hearing loss.

51.     Stanic Rasin, like all class members, requires prescription hearing aids to treat her hearing loss.  Like all class members, a licensed hearing care professional has determined that her hearing needs are best met with hearing aids and cannot be appropriately addressed by BAHAs or OTC hearing aids. Even if Stanic Rasin were to get a CI for her right ear, she would still need a hearing aid for her left ear. Regardless, she does not wish to get a CI due to the possible negative and permanent side effects.

**B.     History of Disability-Based Exclusions in Health Coverage.**

52.     Based on information and belief, the Hearing Aid Exclusion is based on historic stigma and prejudice against people with hearing disabilities.

53.     Cigna, like other health plans, historically excluded coverage based on disability. During the twentieth century, health plans could freely avoid providing coverage to any category of people that were viewed as undesirable risks, including disabled. *See* Blake, p. 1085. Cigna's benefit design during this period did not provide coverage for many

disability-related conditions, including hearing loss.

54.    In 1965, the Medicare and Medicaid Act was signed into law. These two programs were intended to meet the needs of the elderly and disabled, two populations that were generally excluded from coverage by private insurance. Medicare coverage was modeled on the private coverage offered by Blue Cross and Blue Shield plans at the time. *See* De Lew, Nancy, *Medicare: 35 Years of Service*, Health Care Finance Rev. 2000 Fall; 22(1):75–103.

55.    Thus, the exclusions imposed in the typical private health insurance plans were imported into Medicare. *Id.* This includes the exclusion of coverage for hearing aids. These kinds of historic exclusions remain largely unexamined in health coverage.

56.    Upon implementation of the ACA, health insurers should have reviewed and reconsidered whether such historic exclusions were the result of discrimination or were justified using the same medical and scientific standards applied to all other covered services. Based upon information and belief, Cigna did not undertake such an analysis when the ACA was first implemented, nor even through today.

57.    Cigna includes the same or similar Hearing Aid Exclusion in various Cigna health plans, whether insured or administered, across the country. Even when the Exclusion is differently worded or, as with Ms. Stanic Rasin's plan, has an age limitation, it has the same effect of eliminating all coverage for hearing aids and related services without any medical and scientific evidence to support the Exclusion. This is true whether the exclusion is categorical or only imposed above a certain age.

C.    **Cigna's Hearing Aid Exclusion Is Disability Discrimination.**

1.    **Intentional Discrimination.**

58.    Kaiser's design and administration of the Hearing Aid Exclusion is a form of intentional discrimination. *See Schmitt*, 965 F.3d at 954.

59.    Given the history discussed above and on information and belief, the Hearing Aid Exclusion, in one form or another, has been part of the benefit design in many of

Cigna's health plans.

60.     Based on information and belief, Cigna did not consider whether the Hearing Aid Exclusion in the health plans it insured and administered resulted from historic discrimination and prejudice, even when Cigna evaluated whether its benefit design practices complied with the non-discrimination requirements in the ACA.

61.     The only purpose of the Hearing Aid Exclusion is to eliminate coverage of medically necessary hearing aids, *i.e.*, the precise coverage often needed by disabled enrollees with hearing loss. Thus, the Hearing Aid Exclusion is targeted at eliminating otherwise medically necessary coverage for its hearing disabled enrollees.

62.     By intentional design, the Hearing Aid Exclusion is uniquely and specifically targeted at hearing disabled enrollees to ensure that the hearing aids needed by most enrollees with disabling hearing loss would not be covered.

### 2.     Cigna's Hearing Aid Exclusion Is a Form of Proxy Disability Discrimination.

63.     Cigna's Hearing Aid Exclusion is a form of proxy disability discrimination. Proxy discrimination occurs when a defendant enacts a policy that treats people differently on the basis of seemingly neutral criteria that are so closely associated with a protected group that the discrimination on the basis of those criteria is essentially intentional discrimination against the protected group. Proxy discrimination exists where "the needs of hearing disabled persons differ from the needs of persons whose hearing is merely impaired such that the exclusion is likely to predominately affect disabled persons." *Schmitt*, 965 F.3d at 959, n.8.

64.     Hearing aids are so intertwined with hearing disability that the exclusion of hearing aids is a proxy for excluding hearing disability.

65.     Hearing aids are only used to treat forms of hearing loss and impairment. No other condition relies on hearing aids for medical treatment. Accordingly, an exclusion of coverage for hearing aids is targeted directly at hearing loss.

66.    And, as described above, all people diagnosed with hearing loss and who require prescription hearing aids meet the definition of "disability" relied upon in Section 1557, such that an exclusion of all prescription hearing aids impacts only (or nearly only) people with disabling hearing loss.

67.    In other words, there is a reasonably strong correlation between hearing disability and use of prescription hearing aids. *See Schmitt v. Kaiser Found. Health Plan of Wash.*, No. C17-1611-RSL, 2022 U.S. Dist. LEXIS 138974, at *2 (W.D. Wash. Aug. 4, 2022) ("hearing loss is a viable proxy for hearing disability"); *E.S. v. BlueShield*, No. C17-1609-RAJ, 2024 U.S. Dist. LEXIS 48611, at *8 (W.D. Wash. Mar. 19, 2024) (same). In sum, the Hearing Aid Exclusion is illegal proxy discrimination because it targets hearing disabled enrollees who require prescription hearing aids. Here, hearing aids are a proxy for hearing disability.

68.    Thus, the "fit" of the Exclusion (*i.e.,* how closely it correlates to disability) is sufficiently close to constitute proxy disability discrimination.

**D.    Alternatively, Cigna's Hearing Aid Exclusion Is Disparate Impact Discrimination.**

69.    Even if the Court were to conclude that the Hearing Aid Exclusion is not intentional/proxy disability discrimination, it disparately impacts enrollees who are hearing disabled. Specifically, Cigna's Hearing Aid Exclusion disparately impacts enrollees who are hearing disabled by denying them "meaningful access" to the durable medical equipment and/or prosthetic device benefit. Cigna's Hearing Aid Exclusion also disparately impacts older enrollees by denying them "meaningful access" to the durable medical equipment and/or prosthetic device benefit of hearing aids.

70.    At the same time, enrollees with other diagnosed health conditions have access to medically necessary durable medical equipment or prosthetics to treat their conditions and a meaningful appeals process if they are denied. In sum, the Exclusion

results in disparate treatment for adults with disabling hearing loss when compared to other enrollees.

71.    The fact that Cigna may provide some coverage for hearing loss such that some hearing disabled enrollees may have their hearing needs met, does not immunize Cigna from liability to Stanic Rasin and the proposed class. *See Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002) (a defendant's "appropriate treatment of some disabled persons does not permit it to discriminate against other disabled people under any definition of 'meaningful access.'").

**E.    As an Alternative to Disability Discrimination, Cigna's Age Limit for Coverage of Hearing Aids is Facial Discrimination Based on Age.**

72.    Age discrimination, like other discrimination, can be facial/intentional or resulting from disparate impact. *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991).

73.    A standard policy eliminating coverage based on a specific age is presumptively facial/intentional discrimination. *See* 81 Fed. Reg. 31434, n.258; 89 Fed. Reg. 37,602, n.182.

74.    Under the Age Discrimination Act, 42 U.S.C. § 6103(b)(1), permits covered entities to "reasonably take[ ] into account age as a factor necessary to the normal operation" of its health program.  But to meet this exception to what is otherwise facial age discrimination, Cigna must demonstrate all of the following:

> **(a)** Age is used as a measure or approximation of one or more other characteristics; *and*

> **(b)** The other characteristic(s) must be measured or approximated in order for the normal operation of the program or activity to continue, or to achieve any statutory objective of the program or activity; *and*

> **(c)** The other characteristic(s) can be reasonably measured or approximated by the use of age; *and*

1
2

**(d)** The other characteristic(s) are impractical to measure directly on an individual basis.

3
4

45 C.F.R. § 90.14 (emphasis added); *see also* 45 C.F.R. § 92.207(c).  In essence, Cigna

5
6

must demonstrate that there is an identifiable ***clinical*** justification as to why it decided that

7
8

adults with disabling hearing loss are not entitled to medically necessary hearing aid

9
10

coverage, and that justification must meet all four of the requirements under 45 C.F.R. § 90.14.  Since hearing aids are medically necessary under the terms of Cigna's health plans – whether used by children or adults – Cigna cannot meet this narrow exception to the prohibition on facial age discrimination under the Age Discrimination Act and under Section 1557.

11
12
13

**F.     Plaintiff Stanic Rasin and Other Enrollees Have Been and Continue to be Subject to and Harmed by Cigna's Discriminatory Hearing Aid Exclusion.**

14

    **1.     Plaintiff Stanic Rasin.**

15
16

75.     Stanic Rasin is one of many enrollees in Cigna's health plans that include a Hearing Aid Exclusion.

17

76.     She lives in Clark County, Nevada.

18
19
20

77.     Stanic Rasin acquired hearing loss in her late teens/early twenties. She has bilateral SNHL. Because of this, she requires hearing aids. She has worn hearing aids since 2009 when she was 42 years old. She is disabled due to this hearing loss under federal law.

21
22

78.     Stanic Rasin's hearing loss is described as profound in her right ear and moderately severe in her left ear.

23
24
25

79.     Her hearing loss affects her communication, work, learning, and many other daily activities. Without her hearing aids, these major life activities are substantially limited. In fact, without hearing aids, they would be impossible.

26
27

80.    In December 2023, Stanic Rasin was told by a Cigna representative that her hearing aids would be covered if she went to an in-network provider.

81.    She then saw an in-network provider who prescribed hearing aids to treat her hearing loss, and the in-network provider indicated that Cigna would cover all but 10% of the cost of the hearing aids.

82.    However, when Stanic Rasin purchased the hearing aids for an out-of-pocket cost of more than $3,000, and submitted the claim, Cigna informed her that there was no coverage for hearing aids due to her age (over 21).

83.    Stanic Rasin appealed the denial of the claim, and on July 19, 2024, received an email stating, again, that the claim had been denied.  No formal denial of the appeal has been received, and no notice that contains any appeal rights has been provided by Cigna.

84.    On July 31, 2024, Stanic Rasin filed an administrative complaint with HHS. Over 180 days has lapsed without agency action such that she has exhausted her administrative appeal rights.

85.    On January 23, 2025, Stanic Rasin sent, by registered mail, notice of her intent to file this lawsuit to Cigna, the Secretary of Health and Human Services, and the Attorney General of the United States.

86.    Stanic Rasin meets all requirements for coverage of hearing aids to treat her disabling hearing loss except that she is over age 21.  Generally accepted medical standards across the country hold that hearing aids can be medically necessary for patients of all ages, not just individuals under the age of 21.  Indeed, HHS has stated that age-exclusions are "presumptively discriminatory" when such exclusions are applied to limit hearing aid benefits.  HHS Notice of Benefit and Payment Parameters for 2023, 87 FR 27208-01 (May 2, 2022).

### 2.    Other Enrollees with Hearing Disabilities Are Subject to Cigna's Hearing Aid Exclusion.

87.    Stanic Rasin is not unique. Based upon the Hearing Exclusion, Cigna has a

standard policy of denying coverage of medically necessary prescription hearing aids to treat disabling hearing loss altogether and/or when the enrollee is over a certain age, such as the age of 21.

88.    Based on information and belief, Cigna administers the Hearing Exclusion by denying all pre-authorization and post-service claims for prescription hearing aids to treat hearing loss and related services in plans with a complete exclusion.

89.    In Cigna plans, like Stanic Rasin's, where some hearing aid coverage is provided to people under a particular age, such as 21 years, the Hearing Aid Exclusion is also triggered by pre-authorization and/or post-service claims that are submitted on behalf of someone who is over the age limit in that plan.

90.    As a direct result, Stanic Rasin and many class members have been forced to pay out-of-pocket for prescription hearing aids. Other members of the class have been forced to forgo needed hearing aids.

91.    As a result of Cigna's deliberate discriminatory actions, hearing disabled enrollees who require prescription hearing aids like Stanic Rasin, do not receive coverage for medically necessary treatment to treat their hearing loss, either based on the condition itself or the condition and their age.

## CLASS ALLEGATIONS

92.    ***Disability Discrimination Class Definition.*** The class consists of all individuals who:

> (1)    have been, are, or will be enrolled under a health plan (whether insured or "self-funded") that exclude hearing aids and related services (whether the exclusion is for all ages or occurs after a particular age, such as 21 years of age) and that was, is or will be administered or insured by (a) Cigna; (b) any affiliate of Cigna; (c) predecessors or successors in interest of any of the foregoing; and (d) all subsidiaries or parent entities of any of the foregoing, at any time on or after (four years before date of filing) ("Class Period");

(2)     have required, require or will require prescription hearing aids and related services while enrolled with Cigna during the Class Period; and

(3)     are not enrolled with Cigna through a Medicare Advantage health plan.

93.     **Size of Class**. The class is so numerous that joinder of all members is impracticable.

94.     **Class Representative Stanic Rasin.** Plaintiff Stanic Rasin has been and is presently, an enrollee in a Cigna health plan that contains a categorical exclusion of all coverage for hearing aids and related services for those over the age of 21. Stanic Rasin has disabling hearing loss that requires treatment with prescription hearing aids. Her hearing loss cannot be addressed with OTC hearing aids or BAHAs.  Though she may be a candidate for a CI in her right ear, she does not wish to risk the possible serious and permanent side effects and drawbacks. Regardless, she would still require a hearing aid for her left ear. She is a "qualified individual with a disability" under the Affordable Care Act, and she is over the age of 21. Cigna denied Stanic Rasin's claim for coverage of her prescription hearing aids, requiring her to pay out-of-pocket for them. Plaintiff's claims are typical of the claims of the other members of the class. Plaintiff Stanic Rasin will fairly and adequately represent the interests of the class.

95.     **Common Questions of Law and Fact**. This action requires a determination of whether Cigna's Hearing Aid Exclusion violates the requirements of the Affordable Care Act's § 1557 and discriminates against Plaintiff and the proposed class on the basis of disability and/or age. Adjudication of these issues will in turn determine whether Cigna is liable under the Affordable Care Act for declaratory judgment, prospective and retrospective injunctive relief, including reprocessing claims, classwide damages and other relief.

96.     **Separate Suits Would Create a Risk of Varying Conduct Requirements**. The prosecution of separate actions by proposed class members against Cigna would create

a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

97.    ***Cigna Has Acted on Grounds Generally Applicable to the Class.*** Cigna, by imposing a uniform exclusion on all coverage for prescription hearing aids and related services, has acted on grounds generally applicable to the class, rendering declaratory relief appropriate respecting the class. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

98.    ***No Other Litigation.***  Upon information and belief, there has been no class action suit filed against this defendant for the relief requested in this action.

99.    ***Venue.*** This action can be most efficiently prosecuted as a class action in the District of Nevada, where Cigna conducts business, and where Stanic Rasin resides.

100.    ***Class Counsel.*** Plaintiff has retained experienced and competent class counsel. Plaintiff is represented by Sirianni Youtz Spoonemore Hamburger PLLC, Nichols Kaster, PLLP, Kathleen Bliss Law PLLC, and Kevin Costello of the Center for Health Law and Policy Innovation at Harvard Law School. Sirianni Youtz Spoonemore Hamburger PLLC is a Seattle-based law firm with significant experience representing individuals and classes who have been denied pension, health, or disability benefits under plans governed by federal and state law, including Section 1557 and ERISA. Nichols Kaster, PLLP is a 35-attorney firm that, over the course of its nearly 50-year history, has developed a sterling reputation in the legal community for representing consumers and employees in class and collective actions, including those under ERISA, Section 1557, and in insurance-related matters. Kathleen Bliss is an experienced trial lawyer in Nevada and a previous Assistant United States Attorney who now serves on the Criminal Justice Act panel for this District and has spent the last ten years running her own firm dedicated to the protection of individual liberties and civil rights. Kevin Costello directs litigation at Harvard Law School's Center for Health Law and Policy Innovation, leading impact litigation to

preserve access to health care for low-income, chronically ill and otherwise vulnerable populations.

### CLAIMS FOR RELIEF
### Count I: Disability Discrimination
### Under Section 1557 of the Affordable Care Act, 42 U.S.C. § 181116

101.    Plaintiff Stanic Rasin and the proposed class are "disabled" under the ACA.

102.    Federal disability anti-discrimination law requires that Plaintiff's allegations regarding disability be construed "broadly in favor of expansive coverage." 28 C.F.R. § 36.105(d)(1)(i); 29 C.F.R. § 1630.2(j)(1)(i). The application of anti-discrimination law under the ACA must also be considered in light of the ACA's purpose.

103.    For example, the ACA is designed to ensure that health benefits, like durable medical equipment, are not "subject to denial … on the basis of the individuals' … present or predicted disability." 42 U.S.C. § 18022(4); *see also* 45 C.F.R. § 156.125 (extending anti-discrimination within health plans providing essential health benefits to discrimination based on disability and "other health conditions").

104.    Because the ACA's purpose is to ensure broad access to health coverage when medically appropriate, regardless of disability or health condition, the ACA's Section 1557 allows for claims of disability discrimination, such as the challenge here to elimination of coverage for hearing aids, even when similar claims might not be viable under the Rehabilitation Act or the Americans with Disabilities Act. *See Schmitt,* 965 F.3d at 955.

105.    Here, Plaintiff states this cause of action under the ACA on behalf of herself and members of the proposed class for purposes of seeking declaratory and injunctive relief, and she challenges the disability-based discrimination arising out of the design and administration of the Hearing Aid Exclusion, both facially and as applied to Plaintiff and the proposed class.

106.    Section 1557 of the ACA, 42 U.S.C. § 18116, provides that "an individual

shall not, on the ground prohibited under … section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

107.    Cigna is a "health program or activity" part of which receives federal financial assistance. 42 U.S.C. § 18116. Thus, Cigna is a "covered entity" under the Affordable Care Act, § 1557.

108.    Cigna and/or its subsidiaries or affiliates provided assurances to the U.S. Department of Health and Human Services that it complies with the requirements of § 1557. *See* 45 C.F.R. § 92.5.

109.    Through its subsidiary/affiliate, it also provided similar statements to its enrollees, confirming that it complies with the requirements of § 1557.

110.    The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., as amended in 2008, defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," 42 U.S.C. § 12102(1)(A).

111.    The applicable regulations state that the term "substantially limits" is to be construed "broadly," is not meant to be a "demanding standard," 29 C.F.R. § 1630.2(j)(1)(i).

112.    "Major life activities" include, among other things, "hearing, communicating and working." 42 U.S.C. § 12102(2)(A).

113.    The presence of a disability is to be assessed "without regard to the ameliorative effects of mitigating measures such as … hearing aids or cochlear implants." 42 U.S.C. § 12102(4)(E)(i)(I).

114.    Plaintiff and the class, as defined, are "qualified persons with a disability" under both Section 504 and Section 1557 and are protected from discrimination under these provisions.

115.    Cigna has discriminated against Plaintiff and the members of the proposed class on the basis of disability in violation of Section 1557 and have thereby denied Plaintiff and members of the proposed class the full and equal participation in, benefits of, and right to be free from discrimination in a covered health program or activity. They are entitled to equitable declaratory and injunctive relief in the form of prospective injunction and reprocessing of all claims denied under the discriminatory Hearing Aid Exclusion.

116.    Without reprocessing, declaratory, and prospective injunctive relief from Cigna's ongoing, discriminatory actions, Plaintiff and proposed class members have suffered and will continue to suffer, irreparable harm.

### Count II: Age Discrimination
### Under Section 1557 of the Affordable Care Act, 42 U.S.C. § 181116
### In the alternative to disability discrimination

117.    Section 1557 of the ACA, 42 U.S.C. § 18116, provides that "an individual shall not, on the ground prohibited under … the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.)…, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

118.    Cigna is a "health program or activity" part of which receives federal financial assistance. 42 U.S.C. § 18116; 45 C.F.R. § 92.4. Thus, Cigna is a "covered entity" under the Affordable Care Act, § 1557.

119.    Cigna and/or its subsidiaries or affiliates provided assurances to the U.S. Department of Health and Human Services that it complies with the requirements of § 1557. *See* 45 C.F.R. § 92.5.

120.    It also provided similar statements to its enrollees in its Summary Plan Description, and based on information and belief, in its denials and explanations of benefits, confirming that it complies with the requirements of § 1557.

121.    The  Age  Discrimination  Act,  42  U.S.C.  §  6102,  states  that

no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."

122.    Age-exclusions are "presumptively discriminatory" when such exclusions are applied to limit hearing aid benefits.  HHS Notice of Benefit and Payment Parameters for 2023, 87 FR 27208-01 (May 2, 2022).

123.    Cigna has discriminated against Plaintiff and the members of the proposed class on the basis of age in violation of Section 1557 and have thereby denied Plaintiff and members of the proposed class the full and equal participation in, benefits of, and right to be free from discrimination in a covered health program or activity. They are entitled to equitable declaratory and injunctive relief in the form of prospective injunction and reprocessing of all claims denied under the discriminatory Hearing Aid Exclusion.

124.    Without reprocessing, declaratory, and prospective injunctive relief from Cigna's ongoing, discriminatory actions, Plaintiff and proposed class members have suffered and will continue to suffer, irreparable harm.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.    Certify this case as a class action; designate the named Plaintiff as class representative; and designate SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC, Eleanor Hamburger, and Ari Robbins Greene, NICHOLS KASTER, PLLP, Anna P. Prakash, Kathleen Bliss PLLC, Kathleen Bliss, and Kevin Costello as class counsel.

2.    Enter judgment on behalf of Plaintiff Stanic Rasin and the Class due to Cigna's discrimination on the basis of disability under Section 1557, 42 U.S.C. § 18116;

3.    Declare that Cigna violated the rights of Plaintiff Stanic Rasin and members of the proposed class under Section 1557 of the ACA when it designed, issued, delivered and/or administered the Hearing Aid Exclusion in their health plans;

4.    Enjoin Cigna from applying the same or similar Hearing Aid Exclusions now

and in the future;

5.     Require Cigna its agents, employees, successors, and all others acting in concert with them to reprocess and, when medically necessary and meeting the other terms and conditions under the relevant plans, provide coverage (payment) for all claims for coverage of hearing aids denied under the Hearing Aid Exclusion during the class period;

6.     Award reasonable attorney fees, costs and expenses; and

7.     Award such other relief as is just and proper.

DATED: March 5, 2025                    /s/Kathleen Bliss
                                        Kathleen Bliss
                                        NV Bar No. 7606
                                        Kathleen Bliss Law PLLC
                                        170 South Green Valley Parkway, Suite 300
                                        Henderson, NV 89012
                                        Telephone: (702) 318-7375
                                        Email: kb@kathleenblisslaw.com

                                        SIRIANNI YOUTZ
                                        SPOONEMORE HAMBURGER PLLC
                                        Eleanor Hamburger (WSBA #26478)*
                                        Ari Robbins Greene (WSBA #54201)*
                                        3101 Western Avenue, Suite 350
                                        Seattle, WA 98121
                                        Telephone: (206) 223-0303
                                        Email: ehamburger@sylaw.com
                                                arobbinsgreene@sylaw.com

                                        NICHOLS KASTER, PLLP
                                        Anna P. Prakash (MN Bar No. 0351362)*
                                        80 S. Eighth Street, Suite 4700
                                        Minneapolis, MN 55402
                                        Telephone: (877) 344-4628
                                        Email: aprakash@nka.com

                                        Kevin Costello (MA Bar No. 669100)*
                                        Center for Health Law & Policy Innovation
                                        Harvard Law School
                                        1585 Massachusetts Avenue
                                        Cambridge, MA 02138

Telephone: (617) 496-0901
Email: kcostello@law.harvard.edu

*Application for admission pro hac vice forthcoming*

**Attorneys for Plaintiff**