Ethan D. Thomas, Nevada Bar No. 12874
**LITTLER MENDELSON, P.C.**
8474 Rozita Lee Ave, Suite 200
Las Vegas, NV 89113
Telephone: (702) 862-8800
Facsimile:  (702) 862-8811
edthomas@littler.com

Joshua B. Simon*
Warren Haskel*
Richard W. Nicholson, Jr.*
Richard D. Diggs*
**McDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile:  (212) 547-5444
jsimon@mcdermottlaw.com
whaskel@mcdermottlaw.com
rnicholson@mcdermottlaw.com
rdiggs@mcdermottlaw.com

Brett Boskiewicz*
**McDERMOTT WILL & SCHULTE LLP**
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 535-4000
Facsimile:  (617) 535-3800
bboskiewicz@mcdermottlaw.com

*Admitted *Pro Hac Vice*

*Attorneys for Defendant Cigna Health and Life
Insurance Company*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IRENA STANIC RASIN, and C.R. on behalf of B.R., on their own behalf, and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:25-cv-00407-CDS-DJA<br><br>**STIPULATION REGARDING THE COLLECTION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**<br><br>As amended on page 15 |

Defendant Cigna Health and Life Insurance Company ("Cigna") and Plaintiffs Irena Stanic Rasin and C.R. on behalf of B.R. (collectively "Plaintiffs") (individually, a "Party" and collectively, the "Parties") stipulate regarding the production of documents and electronically stored information ("ESI") (documents and ESI are collectively referred to herein as "Documents" unless otherwise noted and are defined below) as follows in the above-captioned case (the "Action").

## I.    GENERAL TERMS.

A.    <u>Application</u>. The procedures set forth in this Stipulation shall govern the production of Documents (as those terms are used in the Federal Rules of Civil Procedure, including Rule 34(a)) relevant to this Action.  In the event that any Party identifies a particular source of responsive Documents or ESI for which application of this Stipulation would be impossible or otherwise unduly burdensome or impractical, the Party identifying the source will promptly notify other Parties, and the Parties may meet and confer concerning the source.

B.    <u>Scope of Discovery</u>. This Stipulation does not affect the proper subject matter of discovery in this Action.  Nor does this Stipulation imply that Documents or ESI produced under its terms are relevant or admissible in this Action or in any other litigation.

C.    <u>Preservation of Data</u>. This Stipulation does not alter or expand the preservation obligations of any party.

D.    <u>Privileges</u>. Nothing in this Stipulation shall be interpreted to require the disclosure of Documents or ESI that a Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

E.    <u>Legibility</u>. The Parties will make reasonable efforts to ensure that all Documents and ESI they produce are legible.  If a copy is not legible (i) and it is possible to produce a legible copy, such a legible copy will be produced (subject to relevant general and specific objections) within five (5) business days of a request from a receiving Party, or as mutually agreed upon by the Parties, but (ii) if no legible copy can be made, then the original will be made available for inspection and copying within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.

1

F.    Modification and Amendment. Subject to entry by the Court, this Stipulation may be modified or amended by written agreement of the Parties.

G.    Reservation of Rights. The Parties reserve all rights under the Federal Rules of Civil Procedure, the Local Rules of Practice of the U.S. District Court for the District of Nevada, and applicable Judicial Practice Standards.

H.    Definitions.

1.    "Document" or "electronically stored information" or "ESI" as used herein, is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).

2.    "ESI" means and refers to information created, manipulated, communicated, stored (on-site and/or off-site), and best utilized in electronic, digital, and/or native form, including, without limitation, the following: e-mail; word processing documents; spreadsheets; presentation documents; graphics; animations; images; audio, video, and audiovisual recordings; voicemail; instant messages and short messages exchanged over collaboration and chat platforms; mobile messages (including SMS, MMS, RCS, and platform-native messages such as iMessage); transaction logs; computer logs; social media posts; and the like (including attachments to any of the foregoing), stored on databases, networks, computers, computer systems, servers, archives, backup or data recovery systems, removable media, the internet, handheld wireless devices, smart phones, and/or other storage media, requiring the use of computer hardware and software.

3.    "Metadata" is defined as (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a

Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

4.    "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally maintained, created, viewed, and/or modified.  Native Files shall be produced as they are normally maintained, created, viewed, and/or modified.

5.    "Technology Assisted Review" or "TAR" means generally the process whereby software scores and ranks (or presents) documents based on their likely responsiveness, and human reviewers review for responsiveness the documents prioritized (or presented) by the process.

6.    "TAR Software" means the software a Party elects to use to perform the TAR.

## II.    EXCHANGE OF INFORMATION.

A.    <u>Written Identification</u>. Within thirty (30) days of the latest of (1) Entry of this Order; (2) receipt of a written discovery request from another Party after entry of this Order; or (3) from Entry of an Order consistent with this Stipulation, the producing Party shall identify in writing:

(i)    a reasonable subset of ESI custodians, if any, that are likely to have ESI responsive to those written discovery requests and their custodial data sources;

(ii)    noncustodial data sources that are likely to have ESI responsive to those written discovery requests;

(iii)    the search methodologies, including proposed search terms, if applicable, that the producing Party intends to use for each disclosed source of potentially responsive ESI;

(iv)    the validation methodologies that the producing Party intends to use and what the validation information that the producing Party will communicate to the other Parties.

B.    <u>Conference.</u> Within 15 days after the producing Party has identified in writing the information set forth in Section II.A and prior to producing Party's production of ESI, the Parties

shall meet and confer regarding custodians, custodial data sources, noncustodial data sources, search methodologies, and validation methodologies.

### III.   CUSTODIANS, SOURCES, AND ACCESSIBILITY OF DOCUMENTS AND ESI.

A.   <u>Custodians</u>. Prior to the production of ESI, each Party shall provide to all other Parties a list of ESI custodians from whom ESI will be collected and a good-faith explanation describing how the reasonable subset of ESI custodians was determined; for example, their current and former job titles and descriptions of their work. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from custodians or additional custodians be searched and to meet and confer regarding such request. If the Parties disagree as to the additional searches or additional custodians after a good faith meet and confer, the Party seeking discovery may submit the issue to the Court in accordance with the Court's procedures. Following agreement on a list of Custodians, each Party will begin collecting potentially responsive documents, ESI, and information in the possession, custody, or control of each Custodian (the "Collected Documents").

B.   <u>Sources</u>. The Parties shall take reasonable efforts to identify and collect any Documents and ESI potentially relevant to this Action from all sources of potentially responsive, non-duplicative information that are within the Parties' possession, custody, or control. To the extent a producing Party has identified and is aware of custodial or non-custodial files, folders, or other sources containing responsive Documents or ESI (the "Targeted Collection" documents), those Targeted Collection files, folders, or other sources shall be collected and reviewed for responsiveness and potential production (if not privileged) regardless of whether the underlying Documents or ESI in those Targeted Collections were to hit on a search term or otherwise be identified through the use of TAR.

C.   <u>Accessibility of ESI</u>. The Parties agree that if the producing Party determines a source is not "reasonably accessible" pursuant to Fed. R. Civ. P. 26(b) during the search and collection process it will provide sufficient information regarding the accessibility of the source to enable the Parties to confer in good faith about whether such source or Document will be produced or methods by which the information can be produced. If the Parties disagree as to the accessibility of the source

after a good faith meet and confer, the Party seeking discovery from the source may submit the issue to the Court or its designee in accordance with the Court's procedures.

**IV.    SEARCH OF ESI AND TECHNOLOGY-ASSISTED METHODOLOGIES.**

A.    <u>Collection of ESI</u>. The Parties shall use reasonable efforts to collect ESI in a forensically sound manner that does not alter Metadata or other file attributes. In responding to discovery requests, a reasonable inquiry must be made. As part of this inquiry, the producing Parties may employ various methods

B.    <u>Search Queries and Methodologies</u>. The Parties shall meet and confer on the application, if any, of search or other filtering technologies to be applied to custodial and non-custodial Documents and ESI, including search terms, file types, date ranges, transparent validation procedures and random sampling, predictive coding, or other appropriate advanced technology, including systems used to track review status related to those advanced technologies.

The Parties may use various queries and methodologies. These may include the use of TAR, keyword searching, continuous active learning (CAL), or other technology assisted methodologies to help them to identify responsive ESI.

(i)    <u>Technology Assisted Methodologies.</u> If a Party chooses to use TAR, CAL, or other technology assisted methodologies to identify potentially responsive ESI, the Parties will discuss and negotiate a technology assisted protocol, and the producing Party will provide a hit count report.

(ii)    <u>Keyword Search.</u> If a Party chooses to use search terms, the Party shall disclose the search terms applied, the sources of ESI to which the searches were applied, and the resulting hit counts.

If the Parties cannot agree to a technology assisted protocol or search terms to be used or sources of ESI to be searched after meeting and conferring and negotiating in good faith, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing Party's production obligation (to the extent it is dependent on resolution of such technology assisted protocol or search terms) will be stayed; this stay shall not apply to any portion of the production about which there is no dispute. The Parties will confer in good faith to

determine the extent to which production may occur during the pendency of the motion, with the goal of facilitating an efficient and orderly discovery process.

C.    Email Threading. The Parties agree that only the most-inclusive email in an email thread needs to be reviewed or produced, and that to the extent multiple unique most-inclusive email threads branch from an initial sent email, each will be considered a separate most-inclusive email for purposes of review and production.  To the extent an underlying email within a thread includes an attachment, that email with the attachment will be considered to be a most-inclusive document branch and also separately reviewed or produced.  To the extent that any subsequent email in a thread alters the text of a prior email, the last email in the thread before the such alteration will also be considered a most-inclusive email. Only the most-inclusive documents as described in this paragraph will need to be reviewed or logged for privilege; however, the parties will identify in a privilege log all individuals that were authors, recipients, and blind copy recipients to the email thread, not just the most-inclusive thread.

**V.    PRODUCTION OF HARD-COPY DOCUMENTS.**

A.    File Type. The Parties shall produce hard copy documents as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load files (OPT) indicating appropriate document and family breaks, as well as Metadata load files in delimited text format containing the following fields, described in Appendix A: BegBates, EndBates, BegAttach, Custodian, Pgcount, ProdVolume, Record Type, Confidential, Redacted, Extracted Text.  The TIFF image must convey the same information as if the Document were produced in paper.

B.    Extracted Text and OCR. For documents that do not contain redactions, the producing Party will produce an extracted text file for each electronic document where text can be extracted, and an Optical Character Recognition ("OCR") text file for 1) each imaged paper document, and 2) each electronic document for which text cannot be extracted. For documents that contain redactions, the producing Party will provide an OCR text file for the unredacted portions of such documents. The extracted text and OCR files shall be produced as document level text files and be named

6

consistently with their corresponding TIFF files ([producing Party's Name]-000000001.tif and [producing Party's Name]-000000001.txt).

C. <u>Color Copies</u>. A receiving Party may request that specific Hard-Copy Documents be produced in color for good cause.

D. <u>Family Groups</u>. The Parties shall maintain family groups together in one production volume and shall not break family groups apart in separate production volumes.

E. <u>Scan Size</u>. Reasonable efforts will be used to scan Documents at or near their original size, so that the print or image on the Document appears straight and not skewed. Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring text. Physically oversized originals will appear reduced. A producing Party reserves the right to determine whether to produce oversized Documents in their original size. A receiving Party may request that specific oversized Documents be produced in their original size for good cause.

F. <u>Notes and Attachments</u>. If any original Document has notes or attachments affixed thereto, the Parties will produce copies of those Documents with the accompanying notes and attachments unless the note or attachment itself is determined to be privileged or exceptioned (*i.e.*, the attachment is corrupted or a Non-Convertible File-type as set forth in Section VI.K) during processing.

**VI.    PRODUCTION OF ESI.**

A. <u>File Type</u>. Except as specified in Section VI.D below, the Parties shall produce ESI as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load files (OPT) indicating appropriate document and family breaks, as well as Metadata load files in delimited text format containing the fields required by Section VI.B.

B. <u>Metadata</u>. The Parties will take reasonable steps to preserve, to the extent they have a value, all Metadata associated with ESI even if such Metadata is not specified in Appendix A for production. Nothing in this paragraph shall be construed to obligate a party to (i) create new Metadata that is not already in existence at the time of collection of the ESI (except for the populating of the All Custodians field as discussed below) except those fields which are specific to the litigation (*i.e.*

Bates Number, Redacted, etc.), (ii) produce Metadata that is privileged or attorney work product (although such withheld metadata must be included in privilege log), or (iii) produce Metadata that is protected from disclosure by statute or regulation.

C.    Word Processing and Presentation Files.    Documents such as those created by Microsoft Word will be produced in such a manner that comments and tracked changes, including, where available, the identity of the person making that change or comment, will be visible. For PowerPoint-type presentation decks, this shall include, but is not limited to, any links, speaker notes, comments, hidden slides, and similar data. All Metadata contained in or associated with each such file will be produced to the extent technologically possible.

D.    Native Files. The Parties will produce the following forms of ESI in native format as discussed in more detail below:

        (i)    Spreadsheets and delimited files;

        (ii)    Audio, video, and voicemail recordings;

        (iii)    Databases and Structured Data Exports; and

        (iv)    Other file types that do not readily render in image format as discussed in VI.K.

A Party may also request that another Party produce other ESI as Native Files for good cause.

E.    Spreadsheets and Delimited Files. Microsoft Excel and other delimited or spreadsheet files shall be produced as Native Files. For these files, the Parties agree to produce a single slipsheet for each file branded with the text "File Produced In Native Format" along with the corresponding Filename, Bates number, and confidentiality designation. Spreadsheets and delimited files shall be produced with redactions applied using a native redaction tool where reasonably available; where such tools are not reasonably available, the parties shall meet and confer regarding an appropriate alternative format.

F.    Audio, Video, and Voicemail Files. Audio recordings (including voicemail), video recordings, or other rich-media files responsive to discovery requests shall be produced in their native format with original metadata preserved. Where a producing party intends to rely on a transcript of any responsive audio or video evidence, the producing party shall produce the transcript with

8

metadata identifying the source recording by Bates number and the means of transcription. A transcript is not a substitute for the underlying record. The Parties agree to meet and confer regarding the use of transcripts as a searchability substitute for audio and video.

G. Databases and Structured Data Exports. The Parties agree to meet and confer regarding the production of relevant and responsive data found within databases or enterprise software. Database or other structured data such as system logging data shall be produced in a reasonably usable electronic format that is field-delimited or spreadsheet-based (e.g. CSV or XLSX) and preserves the data's native structure and relationship, unless otherwise agreed. A data dictionary or other reference that allows the receiving party to interpret field names, code values, and relationships between tables will be provided upon request.

H. Short Messages and Collaboration Platforms. The Parties agree to meet and confer regarding the format of production, including Metadata, of relevant and responsive data found within short message or collaboration platforms such as Slack, Microsoft Teams, and Google Chat. The production format will include the content, participants, channel or thread context, timestamps, and family relationships between messages and embedded, attached, or linked files.

I. Mobile Device and Ephemeral Messaging. The Parties agree to meet and confer regarding the format of production, including Metadata, of relevant and responsive data found within mobile messaging platforms such as iMessage, SMS, MMS, RCS, WhatsApp, Signal, Telegram, or other platform-native messaging on mobile devices. The production format will include message content, participants, each message's sender, recipient(s), timestamps, and any family relationshjps between messages and embedded, attached, or linked files.

J. DeNIST. Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

K. Non-convertible File Types. Certain file types do not meaningfully convert to TIFF images and to the extent that they are relevant and responsive, the Parties agree to meet and confer regarding production of such files in their Native format. A non-exhaustive list of example file types which are not conducive to conversion into .TIFF or .TIF format include but are not limited to: *.exp

9

*.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chn *.com. *.dll *.exe *.hlp *.ivi *.ivt *.ix *.msi *.nls *.obj *.ocx *.rmi *.sys *.tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb *.eps *.mpeg *.mpg *.ram *.rm *.psd *.ai *.aif *.bin *.bqx *. snd *.mpe *.wnw *.wma *.xfd *.db *.bat *.xnk *.qtl *. kob *.mso *. dat *.m4a *.bak*.xll *.blank *.wdf *.cdo *.snp *.rename *.mdi *.sda *.ren *.001 *.crf *.dtf *.eds *.exl *.dwg *.fdf *.pcl *.wmf *.wps *. fpage *.odttf *.cas *.ldl *.wm *.m4p *.dex *.3g2 *.sss *.xyz.

L.    Color. For any non-Native documents, production will be in color upon request by the receiving party where color is material to the understanding of the document or parts thereof (e.g., pie and bar charts). Documents that need to be produced in color can be produced in Native format. Otherwise, non-Native document images may be produced in black and white.

M.    De-duplication. A party is only required to produce a single copy of a responsive document and shall deduplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. De-duplication of emails shall occur at the family level, such that documents that are attachments to a non-duplicative email shall not be eliminated as duplicates of responsive ESI. For the avoidance of doubt, all unique content will be produced after the de-duplication is processed. Attachments should not be eliminated as duplicates for purposes of production, unless all documents within a family, such as the parent e-mail and all attachments, are also exact duplicates.  In addition, hard copy documents shall not be eliminated as duplicates of responsive ESI. In addition, if deduplication is performed: (1) the identity of the other custodians of deduplicated items must be listed in the "All Custodians" Metadata field of the copy of the single record that is produced; and (2) the complete file paths of the deduplicated items must be listed in the "All Paths" Metadata field of the copy of the single record.

N.    Attachments and Hyperlinked Documents. If any ESI has attachments, the Parties will produce copies of that ESI with the attachments—even if copies of attachments have been produced as part of a different family group—unless the attachment itself is determined to be privileged or exceptioned (i.e., the attachment is corrupted or a Non-Convertible File-type as set forth in Section VI.K) during processing.  If any ESI has hyperlinked documents, the Parties will produce copies of that ESI with the hyperlinked documents upon request by the receiving Party—even if copies of the

hyperlinked documents have been produced as part of a different family group—unless the hyperlinked document itself is determined to be privileged or excepted (*i.e.*, the attachment is corrupted or a Non-Convertible File-type as set forth in Section VI.K) during processing. To the extent feasible, the producing party shall collect and produce the version of each hyperlinked document that existed as of the time the link was sent. Where collection of this point-in-time version is not reasonably feasible, the producing Party shall collect and produce the most contemporaneous version reasonably available, identify the version produced by a version identifier or modification date, and disclose the information. If a producing Party represents that it cannot produce a hyperlinked document that was attached to the original ESI, upon request of the receiving Party identifying a particular hyperlinked document for production, the producing Party will use best efforts to locate and produce that hyperlinked document (or a version closest in time with that hyperlinked document).

O.  Parent-Child Relationships. Parent-child relationships (the association between an attachment or linked document and its parent document or between embedded documents or linked documents and their parents) shall be preserved. Attachments should be consecutively produced with their parent, and the producing Party shall provide Metadata sufficient to identify each attachment or hyperlinked document as an attachment (e.g. RecordType) and to associate each hyperlinked document with its parent communication (e.g. Parent Bates, BegAttach, EndAttach). The Parties agree to meet and confer on a case-by-case basis if a Party believes there is a good-faith basis to withhold completely non-responsive documents attached to an otherwise production-eligible document, and instead, produce those documents as a single-page Bates-stamped TIFF image slipsheet containing the text, "Document Has Been Withheld as Nonresponsive."

P.  Preservation of Native Files. When ESI is produced, the producing Party will retain an unmodified original Native File copy.

Q.  Encryption. The producing Party shall encrypt all Production Data. Such encryption should only be implemented in a manner that would not preclude the reasonable use of ESI. Encryption should be applied using BitLocker or a comparable software or via hardware encryption

using hardware-encrypted drives. The producing Party shall transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

R.    Chain of Custody. The producing Party shall ship encrypted media and/or data electronically via FTP transfer (or the like), or physically via deliver service (e.g., FedEx and UPS) and provide tracking numbers for all shipments to ensure proper chain of custody.

S.    Archived Materials. To the extent either Party determines that responsive information is only contained on Back-Up Tapes and Data, the Parties will meet and confer in good faith to exchange information about the Back-Up Tapes and Data in their possession, when such Back-Up Tapes and Data were created (and/or most recently re-written), and what potentially relevant information they contain. For purposes of this Section, "Back-Up Tapes and Data" means data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.  Nothing in this Section shall be construed as requiring the search and/or production of ESI from Back-Up Tape and Data. The search and/or production of ESI from Back-Up Tape and Data shall be governed by applicable rules and the Court's orders in this action, and the Parties reserve all rights and objections with respect to any requested search.

VII.    **BATES LABELING / CONFIDENTIALITY DESIGNATIONS.**

A.    Labeling. Each page of all images produced (whether Documents or ESI) must be clearly labeled with an indelible, legible, unique Bates number identifier electronically "burned" onto the image. Reasonable steps shall be taken to place the Bates number at a location that does not obscure any information from the source document. In addition, to the extent any image or file is to be marked confidential, each page of the image or file to be marked confidential shall include the appropriate confidentiality designation as determined in the Stipulated Protective Order, entered into by the Parties and granted on August 7, 2025 (see ECF Nos. 45 and 46). There shall be no other legend or stamp placed on the document image, with the exception of redacted information due to claims of applicable privileges.

12

B.      Consecutive Numbering. The Parties agree that a convention on Bates number ordering will help the Parties better organize production of Documents and ESI in this Action. Therefore, to the extent possible, Documents and ESI shall be Bates-numbered consecutively by custodian (source), maintaining all parent-child relationships. Document numbers for documents produced by the Parties shall identify the Party's name and shall be in the format "Party Name-00000001."

C.      File Names. Image file names must be unique and must correspond with the Bates number imprinted on the image. For example, if the Bates number "B0000001" was imprinted, the image would bear the name "B0000001.tif."

D.      Authenticity. No Party shall object that Documents or ESI produced pursuant to this Stipulation are not authentic based upon the file-naming convention described in Section VII.C, above. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of Documents or ESI, including the inherent unreliability of Metadata.

E.      Native Files. When Native Files are produced, the Party producing such Native File shall include a single-image placeholder TIFF with a single Bates number on the image itself. As stated above, the slipsheet for each native file will include the text "File Produced In Native Format" along with the corresponding File Name, Bates Number, and Confidentiality designation. The Native File shall not be renamed but will be linked to the placeholder TIFF and the Bates number assigned. There shall be no Bates numbering of Native Files at the page level.

## VIII.   PRIVILEGE AND REDACTIONS.

A.      Privilege Log. Privilege logs shall be produced in spreadsheet native format.  The Parties agree that the following categories of Documents and ESI need not be identified on a privilege log: (i) all communications and attorney work product exchanged between counsel (including in-house counsel and counsel of record in this Action) and their respective clients since April 1, 2024; and (ii) all communications between an in-house attorney or counsel of record and their respective clients concerning scheduling, logistical, and/or other non-substantive or ministerial matters. In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or

13

any other applicable privilege, the producing Party will provide a log or logs by no later than thirty (30) days after the date agreed upon by the Parties for completion of document production containing the following information:

1.    a sequential number associated with each privilege log record (*i.e.*, a privilege log ID number);

2.    the beginning and ending Bates number of the document, if applicable;

3.    identify the nature of the privilege (including work product) that is being claimed;

4.    the type of document, *e.g.*, email, letter or memorandum;

5.    a description of the general subject matter of the document;

6.    the date of the document;

7.    the author of the document, the addressees of the document, and any other recipients (including "cc" and "bcc" recipients); and

8.    where not apparent, the relationship of the author, addressees, and recipients to each other when necessary to evaluate the claim of privilege (e.g., identifying the attorney when the attorney-client privilege is claimed).

If the receiving Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within fourteen (14) days of such a request, the producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer within three (3) business days to try to reach a mutually agreeable solution. If they cannot agree, the Parties must ~~request a conference with the Court before any motions may be filed.~~ file the appropriate motion.

B.    <u>Group Privilege Entries</u>: Further, the Parties recognize that there may be a limited number of instances where there are categories or groups of Documents or ESI in which all items are privileged and that, because of the large number of individual items in such a category or group, it would be a great burden to separately identify on a privilege log each individual Document or item of ESI included in that group. The Parties agree that in such instances, which are intended to occur

14

only in narrow circumstances, in accordance with THE SEDONA PRINCIPLES: BEST PRACTICES, RECOMMENDATIONS & PRINCIPLES FOR ADDRESSING ELECTRONIC DOCUMENT PRODUCTION, comment 3(d) of 2018 ed., and as appropriate, instead of separately identifying each Document or item of ESI on its privilege log, it may instead identify categories or groups of privileged Documents or privileged ESI. In so doing, the Party shall describe in its privilege log the category or group of privileged Documents or ESI (including, without limitation, the criteria and method of delimiting the category or group), the factual basis for a reasonable belief that all Documents or ESI in the category or group are privileged, and the legal basis for the assertion of a privilege as to all Documents or ESI in the category or group. Additionally, if a Party requests further information relating to a category or group identified on another Party's privilege log, such information shall be provided so that the receiving Party has sufficient information to determine whether or not to challenge the privilege claim. The ultimate adjudication of challenged privilege claims shall be made on the basis of a document-by-document review.

C.   Redactions. If the producing Party is redacting information from a page, the producing Party shall electronically "burn" the word "Redacted" onto the page at the location of the redaction(s) and include Metadata reflecting that the document has been redacted (*i.e.*, "Redacted").

D.   Native File Redactions. Producing Parties shall undertake reasonable efforts to produce Native documents in redacted form consistent with the principles contained in this Stipulation. Native files requiring redaction may be redacted in their Native format using a Native redaction tool.

## IX.   NON-PARTY REQUESTS.

A.   Non-Party Document Subpoenas: All non-Party document subpoenas shall be served on all counsel of record in compliance with Federal Rule of Civil Procedure 45. Service via email on a designated service list shall constitute compliance with Federal Rule of Civil Procedure 45.

B.   Non-Party Document Productions: The recipient of a non-Party document production shall serve a copy of that document production on all counsel of record within seven (7) days of

15

receiving the document production. Service of documents or a file transfer link via email on a designated service list shall constitute compliance with this paragraph.

C.    Informing Non-Parties of This Order: The Parties agree to provide a copy of this Order with any document subpoena served in this Litigation.

**X.    MISCELLANEOUS PROVISIONS.**

A.    Inaccessible ESI: If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall promptly meet and confer in good faith to try to resolve such issues. The Parties may submit such issues to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

B.    Limitations: Nothing in this ESI Protocol Order establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Protocol Order shall be interpreted to require information protected by the attorney-client privilege, work product doctrine, or any other reasonably applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

C.    Variations or Modifications: Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, including with respect to any applicable deadlines, the producing Party will notify the requesting Party of the proposed variation or modification. Upon request by the requesting Party, those Parties will promptly meet and confer in good faith to address any issues in a reasonable and timely manner prior to seeking Court intervention.

D.    <u>Best Efforts Compliance and Disputes</u>: The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provisions of this ESI Protocol Order. If a producing Party cannot comply in a particular circumstance with this ESI Protocol Order, such Party shall promptly inform the requesting Party in writing why compliance with the ESI Protocol Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the ESI Protocol Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

## XI.    APPENDIX A: ESI METADATA AND CODING FIELDS.

| Field Name[1] | Populated For (*Email, Edoc, Attachment, or All*) | Field Description |
|---|---|---|
| BegBates | All | First Bates number. |
| EndBates | All | Last Bates number. |
| BegAttach | All | First production Bates number of the first document of the family. |
| EndAttach | All | Last production Bates number of the last document of the family. |
| ParentBates | All | First Bates number of the direct parent document |
| ChildBates | All | First Bates number of all child attachments, separated by semicolons |
| AttachmentList | All | File names for all attachments to an email message or child items in a family group. |
| AttachmentCount | All | Number of files attached to an email message or parent document. |
| Custodian | All | Custodian of a file when collected. |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativePath | All | Relative file path to the produced native file. A Natives folder on the production deliverable should contain a separate native file for each document named with the corresponding BegBates. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateSent | Email | Date email was sent. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the Metadata fields to be produced for a given document pursuant to this ESI Protocol

| Field Name[1] | Populated For (*Email, Edoc, Attachment, or All*) | Field Description |
|---|---|---|
| Date/Time Last Mod | Email, Edoc, Attachment | Date and time the document was last modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used for processing the data. |
| ReceiveDate | Email | Date email was received. |
| ReceiveTime | Email | Time email was received. |
| DateCreated | Edoc, Attachment | Date the document was created. |
| TimeCreated | Edoc | Time the document was created. |
| FileName | Email, Edoc, Attachment | File name of the edoc or email. |
| Title | Edoc, Attachment | Extracted title of a non-email document. |
| EmailSubject | Email, Edoc, Attachment | Subject of an email message. |
| Author | Edoc, Attachment | Extracted author of a non-email document. |
| RecordType | All | Indicates that the file is an Email, EDoc, or Attachment |
| HasHiddenData | Edoc, Attachment | Yes where there is an indication of hidden document data such as tracked changes, hidden columns/rows, or speaker/slide notes. |
| Redacted | All | "Has Redactions" "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| ExtractedText | All | Relative file path to the produced extracted text or OCR file of the document.  A Text folder on the production deliverable should contain a separate text file for each document named with the corresponding BegBates.  If a party OCRs documents for its own benefit, the OCR will be provided here.  OCR text files shall be provided for documents with redactions. |
| Confidentiality | All | Populated with a confidentiality designation pursuant to any applicable Protective Order in addition to stamping of production images. |
| Filesize | All | Size in bytes of the native file |
| FilePath | All | The original file path of the email or document as it existed in the source system at the time of collection, including the folder structure and any parent container. |
| AllFilePaths | All | Contains file path for all paths of a file when deduplication is incorporated into ESI workflows |
| Page Count | All | Indicates the number of pages within the document |
| Production Volume | All | Indicates the Production Volume Name |

18

Dated: July 10, 2026

 */s/ Elizabeth M. Binczik*
Brock J. Specht *
Anna P. Prakash*
Elizabeth M. Binczik*
NICHOLS KASTER, PLLP
80 S. Eighth Street, Suite 4700
Minneapolis, MN 55402
Telephone: (877) 344-4628
aprakash@nka.com
bspecht@nka.com
ebinczik@nka.com

Kathleen Bliss (NV Bar No. 7606)
Kathleen Bliss Law PLLC
170 South Green Valley Parkway, Suite 300
Henderson, NV 89012
Telephone: (702) 318-7375
kb@kathleenblisslaw.com

Eleanor Hamburger*
Ari Robbins Greene*
SIRIANNI YOUTZ SPOONEMORE
HAMBURGER PLLC
3101 Western Avenue, Suite 350
Seattle, WA 98121
Telephone: (206) 223-0303
ehamburger@sylaw.com
arobbinsgreene@sylaw.com

Kevin Costello*
Zeinab Bakhiet*
CENTER FOR HEALTH LAW & POLICY
INNOVATION
HARVARD LAW SCHOOL
1585 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 496-0901
kcostello@law.harvard.edu
zbakhiet@law.harvard.edu

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

Respectfully submitted,

 */s/ Richard W. Nicholson Jr.*
 Joshua B. Simon*
Warren Haskel*
Richard W. Nicholson, Jr.*
Richard Diggs*
**MCDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile:  (212) 547-5444
jsimon@mcdermottlaw.com
whaskel@mcdermottlaw.com
rnicholson@mcdermottlaw.com
rdiggs@mcdermottlaw.com

Brett Boskiewicz*
**MCDERMOTT WILL & SCHULTE LLP**
200 Clarendon Street
Boston, MA  02116
Telephone: (617) 535-4000
Facsimile:  (617) 535-3800
bboskiewicz@mcdermottlaw.com

*Admitted *Pro Hac Vice*

Ethan D. Thomas
**LITTLER MENDELSON, P.C.**
8474 Rozita Lee Ave, 200
Las Vegas, NV 89113
Telephone: (702) 862-8800
Facsimile:  (702) 862-8811
edthomas@littler.com

*Attorneys for Defendant Cigna Health and
Life Insurance Company*

IT IS SO ORDERED.

Dated: _____July 14_____, 2026

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE

19